IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| TAMMY ESPARZA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:12-CV-204 |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM DECISION OF THE COMMISSIONER**

Plaintiff TAMMY ESPARZA brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance and supplemental security income benefits. For the reasons set forth below, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
BACKGROUND

On February 25, 2010, plaintiff applied for disability insurance benefits and supplemental security income benefits. Tr. 104-05; 111-15. Plaintiff alleged she had been unable to work since August 1, 2008,[1] due to two right shoulder surgeries (dominant arm), a post-surgical MRSA

---

[1] The onset date was subsequently amended to February 10, 2010. Tr. 39.

SS\R&R\Esparza-204.step5-affirm:2

infection in her right shoulder requiring draining and flushing, anemia, hepatitis C, liver problems, and a need for blood transfusions. Tr 125. The Commissioner denied benefits initially and upon reconsideration. Tr. 41-44; 47-54; 64-69.

On June 6, 2011, a hearing was held before an Administrative Law Judge (ALJ). Tr. 21-40. At the hearing, counsel for plaintiff advised the ALJ that the main issue was plaintiff's right shoulder impairment. Tr. 23. Plaintiff testified at the hearing as to her impairments and limitations. A vocational expert (VE) was also called to testify at the hearing. The VE described plaintiff's past relevant work (PRW) as a presser in the laundry industry and as a kitchen helper as *medium* work, and classified her work as a clothing sorter as *light* work, all of which required frequent reaching and handling with the dominant arm. Tr. 35-36. The VE opined that if an individual was limited to only occasional reaching and handling with the dominant arm, and limited to detailed but not complex tasks because of pain and depression, he or she could not perform such jobs but could perform the *light* exertional level jobs of a counter clerk, a laminating machine off bearer, and a bakery worker/conveyor line. Tr. 36-37.

On July 26, 2011, the ALJ rendered an unfavorable decision, finding plaintiff was not disabled and not entitled to benefits at any time relevant to the decision. Tr. 10-17. The ALJ found plaintiff, who was 52-years-old at the time of the hearing with an 8th grade education, had not engaged in substantial gainful activity since the original 2008 alleged onset date. Tr. 12, 126. The ALJ found plaintiff suffered from the severe impairments of (1) right shoulder pain, (2) Hepatitis C, and (3) depression. The ALJ found that while these impairments were "severe" within the meaning of the regulations, they were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, of 10 C.F.R. Part 404. Tr. 13-14.

After reviewing the medical record, and considering the record as a whole, the ALJ found

plaintiff's subjective statements concerning the intensity, persistence and limiting effect of her symptoms were not fully credible. Tr. 14-15. In evaluating the credibility of plaintiff's subjective complains and alleged limitations, the ALJ found plaintiff had described daily activities that were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. Tr. 15.

The ALJ also noted the state agency medical consultant opined that plaintiff could perform *light* work activities with additional manipulative limitations. Tr. 15. After reviewing all of the evidence, including the hearing testimony, the ALJ gave great weight to that opinion, finding it to be consistent with the evidence of record. The ALJ concluded plaintiff retained the residual functional capacity (RFC) to perform *light* work, limited to (1) occasional reaching and handling with her dominant right arm, and (2) detailed but not complex tasks due to pain and some depression. Tr. 14-15. The ALJ noted his RFC assessment was supported by plaintiff's testimony in light of her medical treatment history; the medical signs and findings, including x-rays of her right shoulder showing no acute bony abnormalities; progress notes from plaintiff's treating physicians indicating her incision healed without signs of infection and that her shoulder was tender to palpation with a very limited range of motion; her activities of daily living; and the opinion of the state agency medical consultant. Tr. 15.

The ALJ noted plaintiff's PRW as a clothes presser was *medium* exertional level work. Tr. 15, 127, 140-44. The ALJ found plaintiff could not return to that PRW as it exceeded the *light* exertional level work limitation of the RFC assessment. The ALJ noted that because plaintiff's ability to perform all or substantially all of the exertional demands of *light* work was impeded by

additional limitations, the Medical-Vocational Rules could only be used as a framework[2] and VE testimony was necessary to determine the extent to which these limitations eroded the unskilled *light* occupational base. Tr. 16. Considering plaintiff's age, education, work experience, and RFC, and based upon VE testimony, the ALJ found there were other representative jobs plaintiff remained capable of performing, specifically, counter clerk, laminating off bearer, and bakery worker. Tr. 16. Based on the testimony of the VE, the ALJ concluded that, considering plaintiff's age, education, work experience, and RFC, plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and that under the framework of the rules, a finding of "not disabled" was appropriate. The ALJ thus found plaintiff had not been under a disability from plaintiff's onset date through the date of his decision.

Following an unsuccessful appeal of the ALJ's determination, plaintiff filed this lawsuit seeking federal judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g). Tr. 1-3.

## II.
## ISSUE PRESENTED

In this appeal, plaintiff argues the Commissioner erred in determining plaintiff is not disabled. Specifically, plaintiff contends the ALJ's RFC determination that plaintiff can perform "light" exertional work is not supported by substantial evidence.

## III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the

---

[2]The ALJ noted that if plaintiff had the RFC to perform the "full range" of light work, the grid could have been used and a finding of "not disabled" would be directed by Medical-Vocational Rule 202.11. Tr. 16.

Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence in the context of Social Security determinations "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). That is, substantial evidence "is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

In assessing the substantiality of the evidence, courts generally focus on four factors: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). In making this assessment, courts "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [their] judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). Provided that the correct legal standards are applied, when "substantial evidence supports the [Commissioner's] findings, they are conclusive and must be affirmed." *Spellman*, 1 F.3d at 360.

## IV.
## MERITS

The ALJ determined plaintiff retained the RFC for a limited range of *light* work.[3] Plaintiff contends this finding is unsupported because she demonstrated a "severe limitation in her arms."

---

[3]*Light* work involves lifting no more than 20 pounds at a time, with frequent (1/3 to 2/3 of the time) lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b); 29 C.F.R. § 416.967(b); SSR 83-10. *Light* jobs require use of arms and hands to grasp and hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

Plaintiff acknowledges "there isn't a great deal of medical records," but contends "that which there is demonstrates [plaintiff's] exertional limits." Plaintiff contends the medical evidence demonstrated plaintiff only retained the RFC for a limited range of *sedentary* work.[4] Plaintiff maintains that if the ALJ had made a proper RFC finding by restricting plaintiff to *sedentary* work, the Medical-Vocational Guidelines (or "Grid Rules") would have mandated a finding of "disabled." Plaintiff concludes that in making his "conclusory statement" that plaintiff can perform work at the *light* exertional level, the ALJ was "attempting to avoid a 'disabled' finding by disregarding the evidence of record." Plaintiff concludes "[t]he medical evidence of record demonstrates [plaintiff] is limited to no more than the 'sedentary' exertional level; therefore, Grid Rule 201.12 would require a finding of 'disabled.'"

### A. The Evidence
#### 1. *Objective Medical Evidence*

In September 2009, xrays showed no acute bony abnormality in plaintiff's right shoulder. Tr. 185; 210. However, in early February 2010, plaintiff developed a "large amount" of fluid in her right shoulder joint. Xrays and CT scans showed "severe degenerative changes" in plaintiff's right shoulder, a "cortical collapse involving the superior medial aspect of the right humeral head," as well as "advanced secondary degenerative changes of the right glenohumeral joint" and atrophy of the muscles suggesting chronic rotator cuff tears or other tendinopathy. Plaintiff was diagnosed with right shoulder septic arthritis and underwent a joint aspiration by syringe. Plaintiff developed a staphylococcus infection in her right shoulder. Later that month, plaintiff underwent two (2) laparoscopic arthroscopic lavage and debridements. Complete loss of cartilage was noted on the

---

[4]*Sedentary* work involves lifting no more than 10 pounds at a time and occasionally (up to 1/3 of the time) lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); SSR 83-10.

humeral head and CT scans again showed "advanced degenerative changes involving the shoulder, chiefly within the glenohumeral joint" as well as "[u]nderlying advanced degenerative change with presumptive avascular necrosis." Tr. 195-96; 207-12; 216-26; 235; 273; 283. On February 19, 2010, plaintiff's discharge diagnosis reflected "septic arthritis of the right shoulder, resolved." Tr. 207.

In March 2010, however, plaintiff underwent an open incision debridement and lavage for the persistent infection in her right shoulder. Tr. 190-93; 198-99; 283; 290; 325-26. In April, plaintiff underwent another joint aspiration by syringe which, this time, showed no bacterial growth. Tr. 292. Progress notes from March 2010 through June 2010 reveal plaintiff's incision healed well without signs of infection, and that she was feeling better. Plaintiff was prescribed a mild to moderate pain reliever and her pain was fairly controlled. Plaintiff's right shoulder, however, remained tender to palpation and had very limited range of motion with pain, even though it had improved and her right shoulder condition was "encouraging." Plaintiff was continued on a gentle home exercise program for her range of motion and unrestricted activity was allowed to the degree it was tolerated. Tr. 288-97; 300-11; 325-26. Plaintiff remained on IV antibiotic treatment thru mid-April 2010, and then continued on oral antibiotics. Tr. 294.

In March 2011, examination revealed limited range of motion in plaintiff's right shoulder. Plaintiff was diagnosed with right shoulder pain and fibromyalgia and was prescribed an antidepressant medication. Tr. 350-53. In May 2011, plaintiff presented for a follow up visit. The medical record did not indicate any physical exam of plaintiff's right shoulder. Plaintiff was continued on the antidepressant. Tr. 360. This was the extent of the objective medical evidence at the time of the hearing in June 2011.

## 2. *Subjective Evidence*

Plaintiff applied for disability benefits on February 25, 2010, during the course of surgical attempts to combat the bacterial infection in her right shoulder. At that time, plaintiff indicated she had limited movement in her right shoulder, could not open a door or write with her right arm, and could not drive or do dishes. Plaintiff advised she was waiting for surgery in 5 months to a year, presumably to repair previous rotator cuff tears. Plaintiff indicated that although she had mild restrictions, she could dress, shower, care for her hair with her left hand, feed herself with her left hand, use the bathroom without assistance, and talk on the phone. Plaintiff advised she was able to prepare easy meals, water the yard, wash some laundry, vacuum small areas, do some cleaning, shop in stores, and walk 4-5 blocks. Although plaintiff indicated she could not use her right hand "to certain levels and weights," she did not indicate the levels or weights. Tr. 148-55.

In June 2010, after the bacterial infection resolved, plaintiff complained of pain in her right shoulder, especially with activity. Tr. 300. In February 2011, plaintiff complained of limited use of her right shoulder. Tr. 350. In March 2011, plaintiff presented with complaints of difficulty sleeping, depression, lack of energy, shoulder soreness, and limited use of her shoulder. Tr. 350-53. In May 2011, plaintiff presented with no complaints or pain, and reported she was doing better, sleeping better and that her mood was better. Tr. 360.

At the June 2011 hearing, plaintiff testified to her medical history, and advised her rotator cuff needs to be repaired and that she and her doctor are willing to do the surgery if she can find the funds for it. Plaintiff testified that as a result of her right shoulder impairment she is unable to stretch her right arm out or up, but is able to move her right arm "from the elbow down." Plaintiff testified she "can't really lift heavy stuff" with her right arm, opining she can not lift more than 10 pounds and can "probably barely" lift a gallon of milk "sometimes." Plaintiff explained she "had to

learn to do a lot of things with [her] left" arm using her right arm as a helper arm to the extent she can. Plaintiff testified she does not "drive much at all any more," typically only driving short distances to do her shopping. Plaintiff testified she was prescribed an anti-depressant and arthritis pain pills to help her sleep at night, explaining she does not sleep well because of her right shoulder. Plaintiff described "sometimes" experiencing a "real sharp pain" in her right shoulder, sometimes going "all the way down into the muscle," and stated she will "take aspirin to help the pain every once in a while." Plaintiff testified the pain is worse when she tries to "do stuff," or exercise or stretch her right shoulder. Plaintiff advised she only experiences "a little sharp pain" when simply sitting, and not as bad as pain experienced during activity. Plaintiff advised she can no longer bus tables or do restaurant hostess work because of the reaching and lifting required. Tr. 23-40.

### 3. *Medical Opinion Evidence*

The state agency medical consultant concluded, based on the medical and administrative record, that plaintiff could perform *light* work activities (occasionally lifting up to 20 pounds and frequently lifting up to 10 pounds) with additional manipulative limitations. Tr. 336. Specifically, the consultant opined that due to her right pyogenic shoulder arthritis with joint destruction and humeral head osteomyelitis, plaintiff was limited to only occasional pushing and pulling with her right shoulder, and reaching in all directions with her right arm. Tr. 336; 338. The consultant opined plaintiff's symptoms were severe but were not expected to remain severe for twelve (12) consecutive months. Tr. 342.

### B. Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff maintains the medical record does not indicate her pyogenic arthritis in her right shoulder was reversed by her surgeries. The undersigned agrees. While the persistent bacterial

infection was resolved, it does not appear plaintiff's underlying right shoulder deficiencies were eliminated. The ALJ, however, did not deny disability based upon a finding that plaintiff had been cured. Instead, the ALJ found the record evidence demonstrated plaintiff has an unresolved severe right shoulder impairment causing right shoulder pain. The ALJ specifically noted plaintiff had limited range of motion in her right shoulder and accounted for this restriction in plaintiff's RFC by limiting plaintiff to *light* exertional level work, with only occasional reaching and handling with her dominant right arm.

Plaintiff's primary argument appears to be, however, that the evidence did not support the ALJ's finding that plaintiff can lift no more than 20 pounds and can frequently lift or carry up to 10 pounds (*light* work). Plaintiff argues the evidence only supported a finding that plaintiff can lift no more than 10 pounds and occasionally lift or carry light weight items (*sedentary* work). Plaintiff concludes the ALJ's decision was an abuse of discretion, a result of legal error, and lacks substantial evidence in the record, and requests this Court find plaintiff is limited to the *sedentary* exertional level.

The objective medical evidence of record did not specifically address plaintiff's ability to lift or carry, did not address the amount of weight that could be lifted or carried (particularly not distinguishing between 5 pounds and 10 pounds), or the frequency with which plaintiff could lift or carry. The record one month before the administrative hearing did, however, reflect plaintiff presented with no complaints or pain, and no examination of plaintiff's right shoulder was conducted. The record did contain the opinion evidence of the state agency medical consultant that, based on the objective medical evidence and plaintiff's subjective statements contained in her administrative file, plaintiff could perform the requirements of *light* work with pushing, pulling and reaching limitations. Plaintiff's administrative records, filed during the time of the various

treatments combating plaintiff's bacterial infection, indicated she was able to perform a restricted level of activities of daily living, and her subsequent testimony that she could not "really lift heavy stuff" reflected plaintiff's opinion that she could not lift more than 10 pounds.

The only evidence that plaintiff's lifting was limited to a maximum of 10 pounds was plaintiff's testimony. After reviewing the medical record, and considering the record as a whole, the ALJ found plaintiff's subjective statements concerning the intensity, persistence and limiting effect of her symptoms were not fully credible, noting plaintiff had described daily activities that were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. The ALJ noted the state agency medical consultant's opinion that plaintiff could perform *light* work activities with the additional manipulative limitations, and found that opinion was consistent with the evidence of record including plaintiff's hearing testimony, giving great weight to that opinion. The ALJ found the RFC for *light* work with only occasional reaching and handling was supported by plaintiff's testimony, her medical treatment history, the medical signs and findings, progress notes, her reported activities of daily living and the opinion of the state agency medical consultant.

Based on this state of the record, the Court cannot find plaintiff has demonstrated that no substantial evidence supported the ALJ's findings or supported only a finding that plaintiff could perform only *sedentary* work instead of *light* work. The ALJ fully considered and addressed the credibility of plaintiff's alleged limitations, accurately reviewed the objective medical evidence, including the most recent objective medical evidence of no complaints or pain, and analyzed the opinion of the consulting physician which provided evidentiary support for the RFC determination. Plaintiff has not shown the ALJ abused his discretion in accepting the opinion of the consulting physician which opinion, together with the absence of objective medical evidence showing a severe

limitation, *i.e.*, 10 pounds or less, in plaintiff's ability to lift or carry, supported the credibility finding by the ALJ regarding plaintiff's subjective complaints.

The Court also notes the ALJ recognized plaintiff suffers from additional limitations, accounted for in his RFC determination, and thus properly relied upon the testimony of a VE in evaluating plaintiff's case. *See Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir. 1986). The VE identified *light* jobs which require only occasional reaching and handling with a dominant arm, and which require only detailed but not complex tasks. As noted by defendant, none of the occupations identified by the VE and the ALJ as other work plaintiff can perform with her RFC require bilateral reaching and handling, and plaintiff has not claimed any limitation of her left arm. The Fifth Circuit has found that jobs at the *light* exertional level may be performed by individuals without bilateral use of arms, absent a specific requirement otherwise. *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). Once it was shown there are other jobs existing in significant numbers in the economy that plaintiff could perform, the burden shifted to plaintiff to show she could not perform the alternative work. Plaintiff failed to meet this burden.

Plaintiff has not demonstrated the ALJ committed legal error in finding plaintiff retains the RFC for a limited range of *light* work. Similarly, plaintiff has not demonstrated the RFC finding for *light* work completely lacks a substantial basis in the record, or that the record substantially supports only a finding that plaintiff is limited to the *sedentary* exertional level. Plaintiff's ground of error should be DENIED.

# V.
# RECOMMENDATION

There is no dispute that plaintiff suffers pain, particularly when using or moving her right

arm and shoulder. It is undisputed that she cannot perform the jobs she has held in the past. As to plaintiff's subjective complaints of pain, there exists no objective method of measuring pain and the determination of when pain is disabling must be made by the administrative fact finder. The ALJ made his findings and gave the reasons for them. This Court cannot substitute its judgment for that of the defendant Commissioner. Consequently, the administrative determination of not disabled must be affirmed.

Therefore, it is the opinion and recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the Commissioner finding plaintiff TAMMY ESPARZA not disabled and not entitled to disability benefits be AFFIRMED.
`

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this  4th  day of March 2014.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).